[Civ. No. 65316. Second Dist., Div. Five. Oct. 19, 1983.]

MARK STEVEN NOVICK, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Appellant.

**COUNSEL**

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiff and Appellant.

Ira Reiner, City Attorney, John T. Neville, Senior Assistant City Attorney, and Richard M. Helgeson, Assistant City Attorney, for Defendant and Appellant.

**OPINION**

**STEPHENS, J.**—Defendant, appellant and cross-respondent, the City of Los Angeles (hereinafter City), appeals a judgment entered against it awarding plaintiff, respondent and cross-appellant, Mark Steven Novick (hereinafter Novick), damages arising out of a civil rights lawsuit filed against City and various Los Angeles police officers. In a related action, Novick appeals the superior court's determination denying his motion for attorney's fees. Due in part to the procedural complexity of the separate appeals presented, we address City's appeal first.

City's appeal arises from the award of damages to Novick for violations of his civil rights emanating from an illegal search of his residence and business, his subsequent arrest, and his criminal prosecution in connection with his role in distributing pornography. City contends that Novick may not recover damages from it under the federal Civil Rights Act (42 U.S.C. § 1983)[1] arising from the action of the municipal court's issuance of and determination affirming the constitutionality of a search warrant. City also insists that Novick cannot recover as a result of the city prosecutor's initiation of criminal proceedings against him. Finally, City maintains it is not collaterally estopped from challenging the propriety of Novick's criminal prosecution although an adverse ruling was entered against the People of the State of California regarding the constitutionality of the search and the municipal court conviction.

**FACTS**

In late 1975, officers of the Los Angeles City Police Department were conducting an investigation into the alleged criminal activities of Novick and Herbert M. Feinberg. Novick and Feinberg were under surveillance because of their alleged activities as major Los Angeles pornography distributors. The surveillance primarily centered around a business office located on Beverly Boulevard and the suspects' residence located on Crescent Heights. At these two locations, Novick and Feinberg as well as two other suspects allegedly operated their business under the name of Starlight Enterprises.

---

[1] The federal Civil Rights Act (42 U.S.C. § 1983) states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

During the course of the investigation, the officers also watched the suspects' post office box. At this box, the suspects were observed over a period of three to four weeks receiving various types of mail. From there, the mail was transported back to Novick's and Feinberg's Crescent Heights residence. Later, the officers purchased an allegedly obscene film. This film they believed fell within certain guidelines proscribed by Penal Code section 311.2 as it then applied.[2] Based upon their observations, the police concluded that the Crescent Heights and Beverly Boulevard addresses were used for filling orders for the sale of obscene and pornographic material.

On or about January 20, 1976, the investigating officers received information that an outstanding warrant on an unrelated matter existed for Novick's arrest. On January 21, the officers located Novick, Feinberg and an unidentified individual at the Beverly Boulevard address. Novick was placed under arrest. In effectuating the arrest, the officers noticed, in plain view, several film boxes that depicted various sexual acts on the covers. Immediately after the arrest Feinberg and the individual departed. Fearing that other evidence at the Crescent Heights location might be destroyed or removed by the two, the officers contacted the deputy city attorney who advised them to secure both premises.

After securing the premises, the officers made a cursory viewing of the films for the purpose of setting forth a description in an affidavit to be used in support of obtaining a search warrant.[3] The next day a search warrant was issued. The warrant was executed and the evidence seized. Feinberg was later arrested and criminal obscenity charges were initiated in municipal court against the two.

At trial, Novick and Feinberg filed individual Penal Code section 1538.5 motions for purposes of suppressing the evidence seized. Both motions were denied. The court found the warrant as issued and the subsequent seizure of evidence to have been constitutional. Both thereafter pleaded guilty and were convicted.

Novick and Feinberg then appealed their convictions to the superior court. That court found the officers' action of viewing the films and using the information as the basis for a search warrant affidavit in violation of article I, section 13 of the California Constitution and the Fourth Amendment of the United States Constitution. Accordingly, the court reversed both convictions.

---

[2] Penal Code section 311.2 concerns the commercial dissemination of obscene matter.

[3] Viewing allegedly pornographic films in this manner was the then approved method of gaining information for purposes of obtaining a search warrant. This procedure was later suspended because of its questionable constitutionality.

On June 3, 1976, Novick and Feinberg filed an 18-count complaint in the superior court naming City and several Los Angeles City police officers as defendants.[4] It was alleged that defendants, acting under color of California law and in the scope of their employment as law enforcement officers for the city and county, wrongfully entered their private premises without permission, consent or a search or arrest warrant; that they had been arrested and prosecuted for possession of obscene material as a result of the defendant's conduct; and that they would continue to incur attorney's fees and other expenses in connection with the pending criminal prosecution. Compensatory and punitive damages were sought. The causes of action were based upon trespass, invasion of privacy, intentional infliction of emotional distress, violations of the search and seizure provisions of the United States and California Constitutions, and violations of the federal Civil Rights Act (42 U.S.C. § 1983).

City answered, denying the pertinent allegations. It argued by way of affirmative defenses that its actions were lawful and conducted under governmental immunity. On November 2, 1976, the police officers answered.

On June 6, 1978, plaintiff Feinberg dismissed his action. Novick, however, proceeded with his action and the matter was sent to arbitration on September 19, 1979.

At arbitration, the amount of attorney's fees expended in Novick's effort to suppress the evidence was considered. Novick requested $1,500 attorney's fees in connection with the initial municipal court proceeding and $5,976.07 in attorney's fees for the subsequent appeal. Pursuant to 42 United States Code section 1983, Novick was awarded $3,000 against City and three police officers for attorney's fees incurred. City and the three officers then requested a trial de novo.

On March 30, 1981, trial commenced in superior court. City attempted to collaterally attack the finding of the superior court which invalidated the search warrant and the subsequent search. The court took judicial notice of the municipal court proceeding, the appeal to the superior court, and the arbitration award. It concluded that as a result of the adverse decision to the People of the State of California on appeal, the City and police officers were collaterally estopped from relitigating the validity of the search warrant. It also determined that the police officers had acted in good faith in carrying out the search in view of the uncertainty of the law at the time and were thus not liable. However, City was found to have acted without any good faith defense.

---

[4]Also named as defendants were the County of Los Angeles and various officers of the Los Angeles County Sheriff's Department.

The court relied principally upon *Owen* v. *City of Independence* (1980) 445 U.S. 622[5] [63 L.Ed.2d 673, 100 S.Ct. 1398] in reaching this conclusion. Additionally, the court found City liable for the acts of the officers since the officers acted within the meaning of *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018].[6] The court specifically concluded that the unlawful search and seizure was the proximate cause of the filing of the misdemeanor obscenity complaint against Novick as well as the proximate cause of Novick's damages. Novick was awarded $1,000 damages for emotional distress by virtue of his having to defend against the criminal charges, and $7,476.07 in attorney's fees incurred. Novick's request for attorney's fees for that trial was denied. Judgment was entered on May 6, 1981, and City and Novick initiated their respective appeals.

## Discussion

We must decide if there exists a sufficient nexus between the illegal search which gave rise to Novick's cause of action under 42 United States Code section 1983 and his subsequent defense of the charges brought against him by the city attorney. Alternatively stated, did the action of the municipal court and the filing of criminal charges by the prosecutor sever the chain of causation between the illegal action of the city police and the damages awarded Novick? We conclude that these awards must be reversed.

In *Martinez* v. *California* (1980) 444 U.S. 277, 283, footnote 7 [62 L.Ed.2d 481, 488, 100 S.Ct. 553], the Supreme Court concluded that state courts may entertain section 1983 claims. Prior to *Martinez,* that right was recognized in California. (See *Brown* v. *Pritchess* (1975) 13 Cal.3d 518 [119 Cal.Rptr. 204, 531 P.2d 772].) **(1)** Consequently, all that is required to bring a claim under the federal Civil Rights Act (42 U.S.C. § 1983) in state court is an allegation that one has been subjected by any form of state action to the deprivation of any right secured by the Constitution of the United States.

---

[5]In *Owen* v. *City of Independence, supra,* 445 U.S. at page 638 [63 L.Ed.2d at page 685], the Supreme Court concluded that an officer's good faith action that results in constitutional violations cannot be asserted as a defense to liability by a municipality under 42 United States Code, section 1983. Consequently, a governmental defendant is not entitled to any derivative immunity based on the good faith actions of their agents.

[6]In *Monell,* the Supreme Court held that " 'a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' " (*Owen* v. *City of Independence, supra,* 445 U.S. at p. 633 [63 L.Ed.2d at p. 682], quoting from *Monell* v. *New York City Dept. of Social Services, supra,* 436 U.S. at p. 694 [56 L.Ed.2d at p. 638].)

Novick's complaint contained sufficient factual allegations to support a cause of action under 42 United States Code section 1983. Here, however, City does not contend that Novick may never recover money damages for the illegal conduct of the officers. Nor does it contend that it was not the practice or custom of the Los Angeles Police Department to view allegedly obscene films for the purpose of obtaining information to set forth in an affidavit in order to procure a search warrant.

The thrust of City's argument is that for Novick to have prevailed below, he must have established that the Los Angeles Police Department's custom of viewing allegedly obscene films without the benefit of a search warrant constituted a deprivation of a constitutional[7] right and that the damages awarded emanated from such a constitutional infringement. It is argued that the independent determination of the municipal court in issuing and deciding the validity of the search warrant as well as the subsequent criminal charges brought by the city attorney severed the chain of causation.

■ The City's first contention argues against estoppel and seeks to re-litigate the probable cause issue. We concur with the ruling of the trial court in applying estoppel. (See *Allen* v. *McCurry* (1980) 449 U.S. 90 [66 L.Ed.2d 308, 101 S.Ct. 411]; *Haring* v. *Prosise* (1983) — U.S. — [76 L.Ed.2d 595, 103 S.Ct. 2368]; *People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439].) In light of our holding on the damage issue, *ante*, we deem it unnecessary to further elaborate on the estoppel issue.

As to City's second contention, although the officers' conduct was found to have been exercised in good faith, this is not determinative. (Cf. *Walter* v. *United States* (1980) 447 U.S. 649 [65 L.Ed.2d 410, 100 S.Ct. 2395]; *People* v. *Superior Court (Freeman)* (1975) 14 Cal.3d 82, 89 [120 Cal.Rptr. 697, 534 P.2d 393].) While the officers themselves have eluded individual liability in light of their good faith conduct, City may not. (*Owen* v. *City of Independence, supra*, 445 U.S. at p. 638 [63 L.Ed.2d at p. 685].) Our problem then is one of deciding if the damages awarded emanated from the constitutional violation.

The superior court in this action, citing *Monell* and *Owen*, concluded that City was liable for the conduct of the officers since the officers executed an illegal search, that being the cursory viewing of Novick's films, pursuant to a governmental custom. As a result, Novick was awarded damages for the emotional strain of having to defend against criminal charges that were

---

[7]The establishment of such a custom has been adequately addressed by the superior court.

later filed, and for the attorney's fees incurred. Significantly, Novick was not awarded damages per se for the illegal search and seizure that occurred.

In *Martinez* v. *California, supra,* 444 U.S. 277, the California Parole Board released an alleged sex offender who committed murder some five months after his release. It was alleged by petitioner's representative that a California immunity statute which granted immunity to the parole board members for their decision to release the prisoner was so construed that it violated the due process clause of the Fourteenth Amendment by depriving the victim of her life without due process. The alleged deprivation came about because the statute condoned a parole decision that indirectly led to her death. That contention was rejected (*id.,* at pp. 280-281 [62 L.Ed.2d at pp. 486-487]), as was the contention that the action of the parole board violated section 1983 (*id.,* at pp. 283-285 [62 L.Ed.2d at pp. 487-489]). The court concluded that although the decision to release the prisoner was action taken by the state, that prisoner's conduct five months later could not be fairly characterized as state action. Consequently, the death was too remote from the parole officers' action to hold them responsible under the federal Civil Rights Act. (*Id.,* at pp. 284-285 [62 L.Ed.2d at pp. 488-489].)

For purposes of our discussion, the *Martinez* decision has three important features. First, the court's analysis appears to import notions of proximate cause from the area of tort into the definition of section 1983 liability. (Dorsen et al, *Emerson, Haber, and Dorsen's Political And Civil Rights In The United States* (4th ed. 1982 supp.) p. 373.) Second, the decision, although limited by its factual setting (see 444 U.S. at p. 285 [62 L.Ed.2d at p. 489]), found no causal relationship in that particular case between the state's action of releasing the prisoner and the murder that occurred. Finally, the court recognized an important fundament that "[N]ot every injury in which a state official has played some part is actionable under [section 1983]." (*Martinez* v. *California, supra,* 444 U.S. at p. 285 [62 L.Ed.2d at p. 489].) ▮ We believe this particular injury which Novick has suffered and for which damages were awarded is not actionable under section 1983. Like *Martinez,* we address this question with a proximate cause analysis in mind.

While the filing of criminal charges by the city prosecutor most certainly was a foreseeable occurrence,[8] such conduct, if independently commenced, acts as a severance of the chain of causation between Novick's cause of action under section 1983 and the damages that were awarded as the prox-

---

[8]An alternative argument can be made that had the search been obviously illegal on its face, it would not be within the realm of foreseeability that a prosecutor would initiate any criminal proceedings if the only supporting evidence to support a criminal action was that which was seized in violation of the Fourth Amendment.

imate result of that violation. (Cf. *Smiddy* v. *Varney* (9th Cir. 1981) 665 F.2d 261, 266, cert. den. — U.S. — [74 L.Ed.2d 66, 103 S.Ct. 65]; *Ames* v. *United States* (8th Cir. 1979) 600 F.2d 183, 185-186; *Dellums* v. *Powell* (D.C. Cir. 1977) 566 F.2d 167, 192-193.)

In *Smiddy* v. *Varney, supra,* 665 F.2d 261, defendant was under investigation for and finally arrested and charged with murder. The complaint was eventually dismissed for insufficient evidence. Defendant thereafter brought suit for a civil rights violation under section 1983 against the employees of the Los Angeles Police Department. The district court entered judgment on a jury verdict awarding defendant damages. Attorney's fees were also added pursuant to 42 United States Code section 1988.

On appeal, the Court of Appeal concluded that the lower court erred in holding the police officers liable for the damages incurred after the district attorney, while exercising his independent judgment, filed the criminal charges. The court noted that the "filing of a criminal complaint immunizes investigating officers [and their employers] . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." (*Smiddy* v. *Varney, supra,* 665 F.2d at p. 266.) It was also observed that this presumption is rebuttable in situations such as, but not limited to, a showing that the attorney was pressured or coerced by the investigating officers to act contrary to his independent judgment, or where evidence exists that the officers' presentation to the attorney of knowingly false information results in an improper action. (*Id.,* at pp. 266-267.)

Here, there exists no evidence to support an argument that the prosecutor's judgment was other than independent.[9] Causation has been severed. Nevertheless, Novick argues that his claim was expressly based upon *Bivens* v. *Six Unknown Fed. Narcotics Agents* (1971) 403 U.S. 388 [29 L.Ed.2d 619, 91 S.Ct. 1999]. No doubt exists that Novick has asserted a proper *Bivens* claim; however, this is not the problem confronting us. Here, there were apparently no damages resultant at the time of the illegal search and

---

[9]Novick challenges the applicability of *Smiddy* by noting that in *Smiddy* the district attorney's office filed the criminal case and prosecuted Smiddy where, as here, the city police arrested Novick and the city prosecutor brought the criminal charges against him. We simply do not buy the argument that the city prosecutor was not acting independent of the police conduct. Whether or not the two entities serve the same employer, they both have a legislatively distinct and severable autonomy. Our review of the record supports a finding that the city attorney in this instance conducted himself with complete independence.

seizure.[10] *Bivens* clearly shows that the plaintiff there, if found capable of demonstrating on retrial an injury consequent upon the violation by federal agents of his Fourth Amendment rights, would be entitled to an award of damages for humiliation, embarrassment and mental suffering arising *directly* from the officer's illegal conduct, not from a defense against a subsequent criminal charge. (See *Bivens* v. *Six Unknown Named Agents of Fed. Bur. of Narc.* (2d Cir. 1972) 456 F.2d 1339, 1348.) Novick was awarded emotional distress and attorney's fees for having to defend against criminal charges, not for the violation itself.

Finally, Novick's reliance on *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40 [123 Cal.Rptr. 468, 539 P.2d 36] is also misplaced. *Weirum* was limited to the use of a proximate cause analysis and the duty owed by a potential defendant. Here, we are faced with the issue of proximate cause and the damages to be awarded. A prosecutor's conduct is presumed independent, therefore, there is no issue of duty.

The connection between acts leading to arrest and a prosecution must be severed for purposes of awarding damages in section 1983 suits. There is no constitutional right of which we are aware to be free from having to defend oneself against criminal charges initiated in good faith. Likewise, there is no constitutional violation from having to defend oneself against a criminal charge brought in good faith. Correlatively, not every injury involving a state official is actionable under United States Code section 1983. (*Martinez* v. *California, supra*, 444 U.S. at p. 285 [62 L.Ed.2d at p. 489].) As a result, the superior court's award of damages is reversed.

CROSS-APPEAL

This action for attorney's fees is brought by Novick pursuant to 42 United States Code section 1988 following the action prosecuted under the Civil Rights Act of 1871, 42 United States Code section 1983. Section 1988, known as the Civil Rights Attorney's Fee Awards Act of 1976, provides that a court may award a reasonable attorney's fee to a party who has prevailed in designated civil rights actions, including one brought pursuant to United States Code, section 1983. We do not reach this issue for Novick cannot be the prevailing party under our view of the law since he failed to establish any damages directly resulting from the search and seizure violation. Accordingly, the denial of an award for attorney's fees was proper.

---

[10]The trial court awarded damages limited exclusively to emotional distress and attorney's fees incurred by Novick for his defense of the criminal charges filed against him.

The judgment on the appeal is reversed; the order on the cross-appeal denying an award of attorney's fees is affirmed. Each party to bear his or its own costs.

Feinerman, P. J., and Hastings, J., concurred.

The petition of plaintiff and appellant for a hearing by the Supreme Court was denied December 14, 1983.