[No. B135399. Second Dist., Div. Seven. Feb. 14, 2000.]

COUNTY OF LOS ANGELES et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOSE VALENTIN et al., Real Parties in Interest.

[No. B135420. Second Dist., Div. Seven. Feb. 14, 2000.]

JOSE VALENTIN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES et al., Real Parties in Interest.

**COUNSEL**

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence and Scott D. MacLatchie for Petitioners and for Real Parties in Interest County of Los Angeles, Eleanor Konrad, R. Zaiden Corrado, John McQuay, Patrick Soll, John Mosak and Ralph Ruedas.

Manning, Marder & Wolfe, Eugene P. Ramirez and Steven J. Renick for Petitioner and Real Party in Interest Douglas Sparkes.

Eduardo M. Madrid; Robert Roman; Peter M. Gwosdof; Emmet J. Gantz; and Morton Minikes for Petitioners and Real Parties in Interest Jose Valentin et al.

No appearance for Respondent.

**OPINION**

**JOHNSON, Acting P. J.**—Plaintiffs in the underlying action seek damages for injuries resulting from their false arrest, false imprisonment and violation of their federal civil rights by defendants, the County of Los Angeles and individual county employees. In a pretrial order, the trial court ruled that under their state law causes of action plaintiffs can only recover damages for the period between their arrest and the time the district attorney filed a criminal complaint against them. As to plaintiffs' claim under the federal Civil Rights Act, 42 United States Code section 1983 (section 1983), the trial court ruled plaintiffs could recover damages only to the extent those damages were attributable to the defendants' prefiling conduct. Both sides

have challenged the trial court's ruling through petitions for writs of mandate. The plaintiffs contend the ruling is too restrictive; the defendants contend the ruling is too broad.

For the reasons explained below, we conclude with respect to plaintiffs' state law claims plaintiffs are entitled to all damages which are attributable to injuries arising from the false arrest and false imprisonment which preceded their arraignment. With respect to plaintiffs' federal civil rights claim, we conclude plaintiffs are entitled to all damages which are attributable to injuries arising from the false arrest and false imprisonment which preceded their arraignment plus all damages attributable to injuries arising from their incarceration subsequent to their arraignment if they can prove the prosecutor did not exercise independent judgment in filing the criminal complaint.

## FACTS AND PROCEEDINGS BELOW

Plaintiffs were arrested without a warrant on April 6 and remained in custody on April 12 when they were arraigned on a criminal complaint filed that day. Plaintiffs were eventually released on bail. After a preliminary hearing the trial court dismissed all charges against them. Plaintiffs then brought the underlying action against the County of Los Angeles and its employees involved in their arrest and imprisonment.

In a previous trial of this action a jury found the defendants liable for false arrest, false imprisonment and violation of the plaintiffs' civil rights under the federal Civil Rights Act (§ 1983). The jury awarded plaintiffs $11.2 million in damages. In an unreported opinion we affirmed the judgment as to liability but reversed as to damages on the ground that with respect to the plaintiffs' state law causes of action the trial court's instructions and special verdict form improperly allowed the jury to award damages for injuries arising from plaintiffs' incarceration following arraignment, contrary to the holding in *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744 [63 Cal.Rptr.2d 842, 937 P.2d 273]. We remanded the matter to the trial court "to determine compensatory damages consistent with the holdings of [*Asgari*] . . . and to take any otherwise appropriate action." We expressed no view on the appropriate measure of damages for violation of plaintiffs' civil rights under section 1983, as the issue was not briefed by the parties.

On remand, the trial court entered the following order with respect to the admissibility of evidence on damages.

"1. Evidence of all actions of the defendants after the filing of the criminal complaint . . . and damages flowing therefrom is inadmissible pursuant

to the . . . order of the Court of Appeal remanding the matter for retrial regarding compensatory damages and *Asgari* v. *City of Los Angeles* [,*supra*, 15 Cal.4th 744].

"2. Evidence of the post-filing damages attributable to pre-filing conduct of the defendants is inadmissible regarding the state law false imprisonment claim pursuant to the . . . Court of Appeal opinion and *Asgari* (*supra*).

"3. Evidence of post-filing damages attributable to the pre-filing conduct of the defendants is admissible under section 1983 pursuant to *Smiddy* v. *Varney* [(9th Cir. 1981) 665 F.2d 261].

"4. The plaintiffs are precluded from offering any evidence of post-filing conduct or claiming any damages from post-filing conduct under the law of the case per the order of the Court of Appeal in the order remanding this case for retrial."

The parties interpret this order to mean that as to plaintiffs' state law claims for false arrest and false imprisonment plaintiffs' damages are limited to the period between the false arrest and the filing of the criminal complaint. With respect to plaintiffs' section 1983 cause of action plaintiffs can recover all damages attributable to defendant's prefiling conduct (not just damages for the period between the false arrest and the filing of the criminal complaint) but may not recover any damages for injuries attributable to defendants' postfiling conduct.

Both sides seek a writ of mandate to correct the errors they perceive in the trial court's order specifying the measure of damages on retrial.

Plaintiffs maintain the trial court erred in cutting off state law damages at the point a criminal complaint was filed. Plaintiffs concede that under *Asgari* they cannot recover damages for injuries attributable to their criminal prosecution because state law immunizes public employees from liability for malicious prosecution. (Gov. Code, § 821.6; *Asgari v. City of Los Angeles, supra*, 15 Cal.4th at p. 754.) Plaintiffs contend, however, under their state law causes of action they are entitled to recover compensation for all injuries they suffered as a result of defendants' prefiling conduct even if those injuries continued beyond the point at which the criminal complaint was filed. Therefore the trial court erred in limiting their false arrest "damages" to the period between arrest and the filing of the criminal complaint.

Plaintiffs further contend the trial court erred in limiting their section 1983 damages to injuries which occurred prior to the filing of the criminal

complaint. They argue under federal law they are entitled to compensation for all injuries attributable to defendants' conduct after the filing of the criminal complaint if they can prove the prosecutor did not exercise independent judgment in filing the complaint. (*Smiddy v. Varney* (9th Cir. 1981) 665 F.2d 261, 266-267.)

The county defendants argue the trial court erred in allowing plaintiffs to recover under their section 1983 claim for any damages suffered after the filing of the criminal complaint whether those damages are attributable to defendants' prefiling or postfiling conduct.

We issued an order to show cause, stayed further proceedings in the trial court and consolidated the two writ petitions.

## Discussion

### I. Under Their State Law Claims, Plaintiffs Are Entitled to All Damages Which Are Attributable to Injuries Arising from the False Arrest and False Imprisonment Which Preceded Their Arraignment.

■ We begin our discussion of state law damages for false arrest and false imprisonment by a public employee with a brief review of how that law developed.

In *Gill v. Epstein* (1965) 62 Cal.2d 611 [44 Cal.Rptr. 45, 401 P.2d 397], the plaintiff was arrested without a warrant and jailed on a charge of theft. Two days later he was arraigned and then returned to jail. He remained in jail until the preliminary hearing five days later, at which time the case against him was dismissed on motion of the district attorney. The plaintiff then brought an action under state law for false arrest and false imprisonment against the police officers who handled his case and the city which employed them. The trial court instructed the jury it could not award damages arising from plaintiff's confinement in jail after his arraignment. The Supreme Court held this instruction was erroneous: "The arraignment would not have taken place had the arrest not been made. Thus, the arrest was a *cause in fact* of plaintiff's imprisonment. Although a chain of causation may be broken by an independent intervening act which is not reasonably foreseeable [citation], plaintiff's arraignment was not such an act. It was clearly a foreseeable result of the arrest and was actually contemplated by defendants. [¶] Under the circumstances, the arrest was a proximate cause of plaintiff's imprisonment both before and after the arraignment, and he is entitled to recover damages for physical and mental suffering during the entire period he was confined." (62 Cal.2d at pp. 617-618, italics in original.)

In *Jackson v. City of San Diego* (1981) 121 Cal.App.3d 579 [175 Cal.Rptr. 395], the police arrested Jackson without a warrant and charged him with robbery and murder. He was convicted and sentenced to state prison. Ten months later he was set free after another individual confessed to the crimes and was tried and convicted. Jackson successfully sued the City of San Diego on a state law claim for false imprisonment and the city appealed. The appellate court defined the issue as "whether an innocent man, convicted and imprisoned for crimes he did not commit, can obtain damages for the entire period of his incarceration." (*Id.* at p. 581.) The court concluded "[a]s tempting as it might be to focus on the legalism of proximate cause to compensate Jackson for all damages he suffered, we cannot do so." (*Id.* at p. 588.)

Observing the Government Code imposes liability on police officers for false arrest and false imprisonment but immunizes them from liability for malicious prosecution (Gov. Code, §§ 820.4, 821.6), the court in *Jackson* concluded the Legislature intended "a ceiling be placed on damages which may be awarded for false imprisonment, limiting those damages to the period of incarceration beginning with the false arrest, but ending when lawful process begins." (*Jackson, supra,* 121 Cal.App.3d at p. 582.) In other words false imprisonment—a violation of a person's personal interest in freedom from restraint—ends at the point where malicious prosecution—a violation of a person's interest in freedom from unjustified litigation—begins. (*Id.* at p. 585.) Therefore, the court held, "Jackson is entitled to all the damages he suffered during the period from his warrantless arrest to the date he was rearrested pursuant to the grand jury indictment." (*Id.* at p. 582.) The court viewed its holding as consistent with *Gill v. Epstein, supra,* 62 Cal.2d 611, because Gill never reached the point at which his false imprisonment would have merged into malicious prosecution. Instead, the charges against him were dismissed at the preliminary hearing and therefore he was "not imprisoned beyond an independent evaluation of probable cause." (*Jackson, supra,* 121 Cal.App.3d at pp. 584.)

In *Asgari v. City of Los Angeles, supra,* 15 Cal.4th 744, the Supreme Court overruled its decision in *Gill* and adopted a more restrictive measure of damages for false imprisonment based on the immunity provisions of Government Code sections 820.4 and 821.6. Asgari was arrested and charged with the sale of narcotics. He remained in jail for more than seven months, until he was acquitted following a jury trial. He sued the arresting officers and the city which employed them for false arrest and related causes of action and was awarded damages for the injuries arising from the entire period of his incarceration. The Supreme Court reviewed the judgment to decide "whether the trial court erred in instructing the jury that a police officer's liability for false arrest may include damages sustained by the

arrestee *after* the filing of formal charges[.]" (15 Cal.4th at p. 748.) The court held that while such damages are allowed in a section 1983 action, citing *Smiddy v. Varney, supra,* 665 F.2d 261, they "[do] not reflect the applicable California law, and . . . the jury should have been instructed that the immunity from liability for injury caused by malicious prosecution, provided to public employees by Government Code section 821.6, precludes a plaintiff in a false arrest action from recovering damages that are attributable to the period of the plaintiff's incarceration that follows his or her arraignment on criminal charges." (*Asgari, supra,* 15 Cal.4th at p. 748.)

Relying heavily on the analysis in *Jackson v. City of San Diego, supra,* 121 Cal.App.3d 579, the Supreme Court explained: "As recognized by the Court of Appeal in [*Jackson*], the Legislature's imposition of liability when a police officer causes a suspect to be confined unlawfully (false arrest), coupled with the Legislature's grant of absolute immunity when a police officer, maliciously and without probable cause, causes a suspect to be confined through the initiation of lawful process (malicious prosecution), evidences a legislative intent to shield police officers from liability for damages that are attributable to a suspect's incarceration after the institution of lawful process. It follows that a police officer's liability for false arrest does not include damages caused by incarceration following the arrestee's arraignment on formal charges." (*Asgari, supra,* 15 Cal.4th at p. 758, fn. omitted.)

The court further explained it was departing from the more liberal rule in *Gill v. Epstein* because "[t]he events . . . in [*Gill*] occurred before the enactment of the California Tort Claims Act of 1963, and the decision in that case therefore did not consider the effect of sections 820.4 and 821.6 or discuss the effect that immunity for malicious prosecution should have on the scope of the damages properly recoverable in an action for false arrest." (*Asgari, supra,* 15 Cal.4th at p. 758, fn. 10.)[1]

Applying the false imprisonment/malicious prosecution distinction to Asgari's situation the court held: "Plaintiff's false imprisonment ended when he was arraigned in municipal court on the felony complaint seven days after he was arrested. At that point, plaintiff's confinement was pursuant to lawful process and no longer constituted false imprisonment." (*Asgari, supra,* 15 Cal.4th at p. 757.)

Although both false imprisonment and malicious prosecution may cause a person to be restrained or confined, under *Asgari* only damages attributable

[1]Although it essentially adopted the *Jackson* analysis, the court disapproved that case to the extent it suggested false imprisonment extends from the time of arrest up to the conclusion of the preliminary hearing. The court held malicious prosecution commences at the time of arraignment. (*Asgari, supra,* 15 Cal.4th at p. 758, fn. 10.)

to injuries arising from false arrest and false imprisonment are compensable in an action under state law against a public entity and its employees. False imprisonment ends at the point malicious prosecution begins which, under *Asgari*, is the point at which the person is arraigned. Contrary to federal law, this rule applies even if the decision to prosecute is not the result of the district attorney's independent judgment but instead the product of pressure by the police or the presentation by the officers of evidence they know to be false. (*Asgari, supra*, 15 Cal.4th at pp. 759-760, distinguishing *Smiddy v. Varney, supra*, 665 F.2d 261.) As we shall explain below, the *Asgari* rule only applies to claims of false arrest and false imprisonment *under state law*. The *Smiddy* rule applies to an action under section 1983 to redress a violation of federal civil rights. (See pt. II, *post*.)

In the previous appeal in this case we held the verdict form improperly allowed the jury to compensate plaintiffs under their state law claims for false arrest and false imprisonment "from the time each plaintiff was arrested and placed into physical custody *until the present time* as to all damages which have been *legally caused to each plaintiff by that plaintiff's arrest*." (Italics added.)

We explained that although the verdict form "permits damages to be awarded to the time of [plaintiffs'] arraignment . . . the form actually instructs that damages may be awarded 'until the present time,' that being April 11, 1995. Appellants were arraigned on the felony complaint on April 12, 1984, some 11 years earlier." While the verdict form was correct under *Gill v. Epstein, supra*, 62 Cal.2d 611, it was not correct under *Asgari*, which was decided while the previous appeal in this case was pending. The verdict form was incorrect under *Asgari* because it allowed plaintiffs to recover all damages proximately caused by their arrest including "damages that are attributable to a suspect's incarceration after the institution of lawful process" in violation of the immunity conferred by Government Code section 821.6. (*Asgari v. City of Los Angeles, supra*, 15 Cal.4th at p. 758.) We remanded the case to the trial court "to determine compensatory damages consistent with the holdings of [*Asgari*]."

Upon remand, the trial court ruled as to plaintiffs' state law claims: "Evidence of all actions of the defendants after the filing of the criminal complaint (hereinafter post-filing) and damages flowing therefrom is inadmissible[.]" This ruling is correct because it precludes plaintiffs from recovering damages attributable to malicious prosecution. (*Asgari v. City of Los Angeles, supra*, 15 Cal.4th at p. 758.)

The trial court further stated: "Evidence of the post-filing damages attributable to pre-filing conduct of the defendants is inadmissible regarding the

state law false imprisonment claim pursuant to [the appellate opinion in this case] and *Asgari (supra).*" The parties interpret this ruling to mean that if, for example, plaintiffs suffered emotional distress as a result of their false arrest and this emotional distress continued after their arraignment they could not be compensated for this injury beyond the time of their arraignment. The trial court's ruling is incorrect to the extent it purports to deny plaintiffs full compensation for their prearraignment injuries.

Although the term "damages" technically refers to compensation for injury,[2] the term is sometimes used to refer to the injury itself. Failure to bear this distinction in mind can cause the confusion which occurred in the present case.

Arguing in support of the trial court's ruling on damages, defendants rely on cases where the courts blurred the distinction between the injury and the "damages," i.e., the compensation, for the injury. For example, in *Gill v. Epstein, supra,* the court stated Gill was "entitled to recover damages for physical and mental suffering during the entire period he was confined." (62 Cal.2d at p. 618.) In *Jackson v. City of San Diego, supra,* the court stated "Jackson is entitled to all the damages he suffered during the period from his warrantless arrest to the date he was rearrested pursuant to the grand jury indictment." (121 Cal.App.3d at p. 582.) In *Asgari, supra,* the court queried whether "a police officer's liability for false arrest may include damages sustained by the arrestee after the filing of formal charges." (15 Cal.4th at p. 748, italics omitted.)

Did the courts in *Gill, Jackson,* and *Asgari* intend to arbitrarily cut off compensation for continuing physical and emotional injuries, caused by false arrest and false imprisonment, at the point plaintiffs were released from custody or indicted? We do not believe so. Such an arbitrary cutoff would contravene the normal rules of tort recovery and is not necessary to maintain the defendants' immunity for malicious prosecution.

A period of imprisonment, however short, may have long-lasting physical and emotional effects. In *Pool v. City of Oakland* (1986) 42 Cal.3d 1051 [232 Cal.Rptr. 528, 728 P.2d 1163], Pool was arrested for attempting to pass a counterfeit $100 bill. He was held in jail overnight and then released. The bill proved not to be counterfeit. In affirming Pool's $45,000 damage award for false arrest and false imprisonment the Supreme Court rejected defendants' claim the award was excessive. The court pointed to Pool's testimony

---

[2]Civil Code section 3281 states: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation in money, which is called damages."

he suffered lingering effects from his ordeal, including elevated blood pressure and an irregular heartbeat, and he would never forget the incident as long as he lived. (*Id.* at p. 1068.)

We seriously doubt the court would have affirmed damages of $45,000 solely for the emotional injury Pool may have suffered during his one night in jail. Clearly, the court found the damage award reasonable because it was intended to compensate Pool for the physical and emotional injuries he continued to suffer after his release from jail.

In the present case there was evidence from the time of their arrests plaintiffs Timothy O'Keefe and Helen O'Keefe suffered stress disorders and marital dysfunction lasting well beyond the time they were released from custody. The evidence also showed plaintiff Malave was unemployed on the day of her arrest but was to have started work the following Monday at a medical clinic. Whether the loss of this job opportunity was proximately caused by her false imprisonment or her incarceration subsequent to her arraignment is a fact to be determined at trial.

Although *Asgari* does place a limit on the normal rule a tortfeasor is liable "for all the detriment proximately caused" by his tortious conduct (Civ. Code, § 3333) nothing in *Asgari* prevents injured plaintiffs from recovering damages for all injuries attributable to their false arrest and false imprisonment. *Asgari* only holds Government Code section 821.6, precludes a plaintiff in a false arrest action from recovering for injuries attributable to the period of incarceration following his or her arraignment on criminal charges. (*Asgari, supra*, 15 Cal.4th at p. 748.) Damages for injuries attributable to the false arrest and the incarceration which preceded arraignment on criminal charges are, therefore, still recoverable. Thus, in the example of Malave's lost job opportunity, defendants could be held liable for her lost wages up to the time of her arraignment if the jury finds this loss was attributable to her false imprisonment. Defendants would not be liable for Malave's lost wages following arraignment, however, because that loss is not attributable to her false imprisonment but to her incarceration following "lawful process." On the other hand, if Ms. Malave suffered emotional distress from the loss of a job proximately caused by her false imprisonment she is entitled to compensation for that injury for however long the jury finds it lasted.

It is not beyond the capacity of the jury to award damages to the plaintiffs for false arrest but not for malicious prosecution. In *Jackson*, the court noted "conduct which might constitute malicious prosecution can become actionable as the tort of false imprisonment when the individual is not released pursuant to a court order. Damages in that case accrue when false imprisonment begins. It is equally logical to apportion damages for false imprisonment when it precedes the malicious prosecution as when it follows it."

(*Jackson, supra*, 121 Cal.App.3d at p. 588.) (Cf. *Dragna v. White* (1955) 45 Cal.2d 469, 473 [289 P.2d 428] [unreasonable delay in taking plaintiff before a magistrate subjects defendant "to liability for so much of the imprisonment as occurs after the period of necessary or reasonable delay."].)

On retrial of this action, the jury should be instructed, with respect to plaintiffs' state law claims plaintiffs are entitled to all damages which are attributable to injuries arising from the false arrest and the incarceration which preceded their arraignment but the immunity from liability for injury caused by malicious prosecution, provided to public employees by Government Code section 821.6, precludes the plaintiffs from recovering damages for injuries attributable to the period of their incarceration following their arraignment on criminal charges. (See *Asgari v. City of Los Angeles, supra*, 15 Cal.4th at p. 748.)

II. *Plaintiffs Who Have Been Falsely Arrested and Imprisoned by Employees of a Public Entity Are Entitled to the Same Damages in a Section 1983 Action Filed in a California Court as They Would Receive in a Section 1983 Action Filed in Federal Court.*

█ We turn now to the issue of damages recoverable against a public entity and its employees in a section 1983 action based on false arrest and false imprisonment brought in a California state court.[3]

█ Federal law, as reflected in *Smiddy v. Varney, supra*, is similar to California law in that it generally limits the plaintiff to recovery for injuries caused prior to the filing of a criminal complaint.[4] (665 F.2d at p. 266.) It does so, however, not because police officers are immune from liability for malicious prosecution—under federal law they are not[5]—but "because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." (*Smiddey* at p. 266.) Thus, the federal courts presume the institution of criminal charges breaks the chain of causation so that further injuries from incarceration are not attributable to the false arrest and false imprisonment. (*Id.* at p. 267.)

---

[3]Section 1983 provides in relevant part: "Every person who, under color of any [state] statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4]Under federal law, the cutoff point is the date the criminal complaint is filed (*Smiddy v. Varney, supra*, 665 F.2d at p. 266) while under California law the cutoff point is the date of arraignment (*Asgari v. City of Los Angeles, supra*, 15 Cal.4th at p. 757). The trial court used the federal cutoff point for the state law claims but this error is of no consequence because in this case the complaint was filed and the plaintiffs were arraigned on the same day.

[5]*Cook v. Sheldon* (2d Cir. 1994) 41 F.3d 73, 79; *Asgari v. City of Los Angeles, supra*, 15 Cal.4th at page 756.

This presumption may be rebutted, for example, by "a showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment" or by showing the officers presented the district attorney with "information known by them to be false." (*Smiddy v. Varney, supra,* 665 F.2d at pp. 266-267.) "Thus," stated the Ninth Circuit, "we hold that where police officers do not act maliciously or with reckless disregard for the rights of an arrested person, they are not liable for damages suffered by the arrested person after a district attorney files charges unless the presumption of independent judgment by the district attorney is rebutted." (*Id.* at p. 267.)[6] Accordingly, unlike California law, federal law allows the plaintiff to recover for injuries arising after the filing of a criminal complaint if the plaintiff can show the complaint was not the product of the prosecutor's independent judgment.[7]

▆▆▆ The trial court's order in the present case is inconsistent with the damages allowable under federal law. Although the court correctly allowed postfiling damages attributable to defendants' prefiling conduct, the court precluded plaintiffs from offering "any evidence of post-filing conduct or claiming any damages from post-filing conduct." While this ruling would be correct under state law as interpreted in *Asgari* (see discussion in pt. I, *ante*), it is not correct under federal law as interpreted in *Smiddy* because under federal law plaintiffs can recover for what amounts to malicious prosecution if they can show the prosecutor's decision to file charges was not based on "independent judgment." (*Smiddy v. Varney, supra,* 665 F.2d at pp. 266-267.) The trial court's order in the present case does not permit recovery on such a showing. In fairness to the trial court, we acknowledge the court ruled the way it did on the federal cause of action because it believed it was required to do so by our opinion in the previous appeal. The court stated in its order if it was not bound by "the law of the case," it would allow plaintiffs to recover for postfiling injuries under the exceptions recognized in *Smiddy*.

As we shall explain, neither our prior opinion in this case nor the Supreme Court's opinion in *Asgari* prohibits the plaintiffs from recovering damages under the *Smiddy* exception for the violation of their federal civil rights. Rather, plaintiffs who have been falsely arrested and imprisoned by employees of a public entity are entitled to the same damages in a section 1983 action filed in a California court as they would receive in a section 1983 action filed in federal court.

---

[6]This appears to be a correct statement of the rule followed in the federal courts. (See also *Ames v. United States* (8th Cir. 1979) 600 F.2d 183, 185; *Dellums v. Powell* (D.C. Cir. 1977) 566 F.2d 167, 192 [184 App.D.C. 275]; *Rodriguez v. Ritchey* (5th Cir. 1977) 556 F.2d 1185, 1193.)

[7]Of course, if the police engage in fresh misconduct, for which they have no qualified immunity, *after* the plaintiff has been arrested and charged, they would obviously be liable for the damages proximately caused thereby. (*Smiddy v. Varney, supra,* 665 F.2d at p. 267; *Barlow v. Ground* (9th Cir. 1991) 943 F.2d 1132, 1136.)

A. *Our Prior Opinion Did Not Hold Plaintiffs' Federal Civil Rights Damages Are Limited by Asgari.*

In the previous trial of this action, the trial court gave the jury a verdict form instructing it as to the measure of damages under federal and state law. The court instructed that under federal law "the jury may award damages to each plaintiff for violation of the civil rights of each plaintiff up to the point a decision was made to file and prosecute criminal charges against each plaintiff[.]" The court instructed that under state law "the jury may award damages to each plaintiff for false arrest or imprisonment from the time each plaintiff was arrested and placed into physical custody until the present time as to all damages which have been legally caused to each plaintiff by that plaintiff's arrest."

In the appeal from the judgment in the previous trial we only addressed the instructions in the verdict form as to damages under state law. We held the verdict form "is inconsistent with the ruling in *Asgari*" and remanded the matter to the trial court "to determine compensatory damages consistent with the holdings of [*Asgari*] . . . ."

Defendants argue our disposition of the prior appeal necessarily shows we determined the measure of damages in a section 1983 action is controlled by *Asgari*. Otherwise, they argue, we would have treated the verdict form's provisions with respect to state law damages as harmless error and affirmed the damage award under federal law.

Defendants misinterpret our previous decision. We could not affirm the damage award under the federal damage rule because it may well have exceeded the amount of damages recoverable under federal law. It will be recalled the jury was instructed that under *state law* it could award plaintiffs "all damages which have been legally caused to each plaintiff by that plaintiff's arrest." Such an award would have been improper under federal law unless the jury found the prosecutor did not exercise independent judgment in filing criminal charges against the plaintiffs. (*Smiddy v. Varney, supra*, 665 F.2d at p. 266.) However, the jury was not instructed to determine whether the prosecutor exercised independent judgment in filing criminal charges. Therefore, the award may have exceeded the amount allowed by federal law. We could not determine whether this was the case because the damage award did not specify the amount of damages being awarded for violation of plaintiffs' civil rights and the amount of damages being awarded under their state causes of action for false arrest and false imprisonment.

### B. *Asgari Does Not Prohibit Plaintiffs from Recovering Damages Under the Smiddy Exception for the Violation of Their Civil Rights.*

*Asgari, supra,* did not involve a civil rights claim under section 1983 (15 Cal.4th at p. 748) and the Supreme Court's opinion cannot be read as applying to section 1983 claims. Thus, contrary to the defendants' position, *Asgari*'s ruling on the measure of damages in a state law action for false arrest and false imprisonment does not apply to a federal law cause of action for violation of civil rights brought in a California court.

### C. *Plaintiffs Who Have Been Falsely Arrested and Imprisoned by Employees of a Public Entity Are Entitled to the Same Damages in a Section 1983 Action Filed in a California Court as They Would Receive in a Section 1983 Action Filed in Federal Court.*

Neither the United States Supreme Court nor our own high court has addressed the question whether a state law rule of damages may limit the amount a plaintiff can recover against a public entity and its employees in a section 1983 action filed in state court.[8] There are, however, two lines of United States Supreme Court cases construing section 1983 which, along with relevant precedents from other states as well as our own, convince us the plaintiffs in this action are entitled to the same measure of damages they would receive if they had sued in federal court. In other words, the *Smiddy* exception applies to actions under section 1983 filed in California courts.

In addressing the issue of damages in section 1983 cases, the United States Supreme Court has expressed a clear preference for uniformity in federal and state forums. In the leading case of *Carey v. Piphus* (1978) 435 U.S. 247 [98 S.Ct. 1042, 55 L.Ed.2d 252], the court held where the constitutional violation supporting the section 1983 action had a common law analogue damages should be calculated according to the "common-law tort rules of damages." (435 U.S. at pp. 257-258 [98 S.Ct. at p. 1049].) In *Smith v. Wade* (1983) 461 U.S. 30, 51 [103 S.Ct. 1625, 1637-1638, 75 L.Ed.2d 632] the court upheld the use of a federal "recklessness" standard for punitive damages in section 1983 cases. Responding to a dissent by Justice Rehnquist, who argued considerations of federalism cautioned against enforcing punitive damage awards against state officials (*Smith v. Wade* at p. 92 [103 S.Ct. at pp. 1658-1659]), the majority pointed out section 1983 actions could be filed in state courts and, therefore, federal law overrode state policy regardless of the forum in which the suit was filed (*Smith v.*

---

[8]The Court of Appeal in *Novick v. City of Los Angeles* (1983) 148 Cal.App.3d 325, 332-333 [195 Cal.Rptr. 747] applied the rule in *Smiddy* to a section 1983 action, but *Novick* was decided before *Asgari* when the state law rule of damages was not more restrictive than the federal rule.

*Wade* at p. 55, fn. 23 [103 S.Ct. at p. 1640]). Neither *Carey* nor *Smith* relied on the damage rules of the states in which the actions arose. Rather, these cases stand for the proposition the damages available in a section 1983 action should be based on uniform federal standards.

Here, the violation of plaintiffs' Fourth Amendment right to be free from unlawful seizure has common law analogues in the torts of false arrest and false imprisonment. (*Allen v. City of Portland* (9th Cir. 1995) 73 F.3d 232, 235.) Therefore, under the rule of *Carey*, had plaintiffs brought their action in federal court they would have been entitled to be compensated under the common law tort rules of damages. The applicable common law tort rule of damages provides the measure of damages "is the amount which will compensate for all the detriment proximately caused" by defendants' wrongful act. (*Fairbanks v. Williams* (1881) 58 Cal. 241, 242; see Civ. Code, § 3333.) Applying the *Asgari* rule of damages could result in the plaintiffs in the present case receiving a lower damage award solely because of the forum they chose. Such a result would conflict with the congressional intent underlying section 1983 as interpreted in *Carey, supra*, 435 U.S. 247 and *Smith v. Wade, supra*, 461 U.S. 30.

Another line of cases holds state immunity doctrines cannot limit liability in section 1983 actions brought in state courts. In the leading case, *Martinez v. California* (1980) 444 U.S. 277, 284 [100 S.Ct. 553, 558, 62 L.Ed.2d 481], the court ruled unanimously a California statute which purported to immunize public entities and public employees from liability for parole release decisions was preempted by section 1983 "even though the federal cause of action [was] being asserted in the state courts." In *Felder v. Casey* (1988) 487 U.S. 131 [108 S.Ct. 2302, 101 L.Ed.2d 123], involving a section 1983 action filed in a Wisconsin court, the Supreme Court held that under the supremacy clause the plaintiffs' failure to comply with the state's claims filing statute could not bar their cause of action.[9] The court concluded: "Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is preempted when the § 1983 action is brought in a state court." (*Felder v. Casey* at p. 138 [108 S.Ct. at p. 2307].) Finally, in *Howlett v. Rose* (1990) 496 U.S. 356, 377-378 [110 S.Ct. 2430, 2443-2444, 110 L.Ed.2d 332], the court held

---

[9]Twelve years earlier our own Supreme Court reached the same conclusion, holding the claim filing requirement of the Government Code did not apply to a cause of action under section 1983. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 842 [129 Cal.Rptr. 453, 548 P.2d 1125].)

a state law sovereign immunity defense was not available to a school board in a section 1983 action brought in state court when such a defense would not be available if the action was brought in a federal court.

Relying on *Martinez* and *Felder*, the Oregon Supreme Court held a state statute which limited the liability of police officers acting within the scope of their employment to $100,000 to any claimant for all claims arising out of a single occurrence could not be applied to an action under section 1983. (*Rogers v. Saylor* (1988) 306 Or. 267 [760 P.2d 232].) The court reasoned: "A state statute which puts a cap on compensatory damages and grants immunity for damages in excess of that limitation impermissibly grants partial immunity to persons acting under color of law for wrongful conduct under section 1983. We therefore conclude that the [statute's] immunization of the officers from liability in excess of $100,000 is invalid when that limitation is applied to section 1983 claims." (*Id.* at p. 238.)

A similar state statute was held inapplicable to a section 1983 claim by the Wisconsin Supreme Court in *Thompson v. Village of Hales Corners* (1983) 115 Wis.2d 289 [340 N.W.2d 704]. Relying on *Carey v. Piphus, supra,* 435 U.S. 247, and *Owen v. City of Independence* (1980) 445 U.S. 622 [100 S.Ct. 1398, 63 L.Ed.2d 673], which set down guidelines for the immunity of municipalities in section 1983 actions, the court held a statutory limit on the amount of damages recoverable in an action against a municipality did not apply to a cause of action under section 1983. Noting the Supreme Court had held in *Carey* that damages in section 1983 suits are to provide fair compensation for actual injuries, the Wisconsin court found "there is clearly articulated federal case law regarding damages and therefore no necessity of resorting to state law." (*Thompson, supra,* 340 N.W.2d at p. 711.) Furthermore, "[s]tate law cannot be used where its application would frustrate federal policies. The policy behind section 1983 civil rights actions is one of compensation for actual injury. Insofar as the state recovery ceiling prevents realization of that policy it must give way." (*Ibid.*)

There can be no doubt Government Code section 821.6, providing immunity to public entities and their employees for malicious prosecution, "evidenced the Legislature's 'intent that a *ceiling be placed on damages which may be awarded for false imprisonment,* limiting those damages to the period of incarceration beginning with the false arrest, but ending when lawful process begins.' " (*Asgari v. City of Los Angeles, supra,* 15 Cal.4th at p. 753, italics added.) For the reasons explained in *Rogers* and *Thompson,* California's ceiling on damages is unenforceable in an action brought under section 1983.

■ Turning to our own state law precedents, we find California courts have followed the general rule that when a federal claim is brought in state court the law of the state controls on matters of practice and procedure but federal law controls on matters of substance. (*Williams v. Horvath, supra,* 16 Cal.3d 834, 841; *Chavez v. Keat* (1995) 34 Cal.App.4th 1406, 1416 [41 Cal.Rptr.2d 72].) In *Williams,* the court determined the Government Code's claims filing requirement was a substantive limitation on a cause of action under section 1983, not a mere procedural rule, and therefore "is inoperative in an action brought under section 1983." (*Williams* at p. 842.) In *Chavez,* the court held the California rule which requires a plaintiff seeking punitive damages initially to offer proof of the defendant's financial status is a rule of substantive law and, thus, inapplicable to an action brought under section 1983. (*Chavez* at p. 1416.) Rules defining the measure of damages in a tort action are clearly substantive not procedural and therefore any conflict between federal and state law must be resolved in favor of the federal law.[10]

Defendants contend the federal rule of damages articulated in *Smiddy* does not apply to the present case in any event because in the prior appeal plaintiffs conceded the trial court properly instructed the jury it could not hold defendants liable for damages under plaintiffs' civil rights claim past the time plaintiffs were arraigned and because they stipulated at trial the prosecutor exercised independent judgment in filing the criminal charges at issue. We disagree with both contentions.

The fact plaintiffs failed to make a particular legal argument on an issue in a prior appeal does not bar them from making the argument later on where, as in this case, we did not reach that issue in our opinion.

As to the purported stipulation in the prior trial, it is not clear from the record just what the parties were stipulating to. They only may have been stipulating Deputy District Attorney Wooldridge, as opposed to someone else, was the person who filed the particular charges against plaintiffs, not that he exercised his independent judgment in doing so. In any case, when a judgment is reversed a party is not bound by a stipulation made at the prior

---

[10]*Asgari* itself suggests the court would have reached a different result if the plaintiff had been proceeding under section 1983 instead of limiting his claim to state law causes of action. After explaining why an attempt to engraft upon California law the federal rule embodied in *Smiddy* would produce "absurd results" the court commented: "A plaintiff may gain any advantages offered under federal law . . . by bringing an action for violation of civil rights under section 1983 in either state or federal court. [Citations.] Immunities based upon state law may not be applied in an action under section 1983, even if the action is brought in state court. [Citation.]" (*Asgari, supra,* 15 Cal.4th at p. 758, fn. 11.)

trial. (*In re Marriage of Reilley* (1987) 196 Cal.App.3d 1119, 1124 [242 Cal.Rptr. 302].)[11]

 For the reasons set forth above, we hold plaintiffs who have been falsely arrested and imprisoned by employees of a public entity are entitled to the same damages in a section 1983 action filed in a California court as they would receive in a section 1983 action filed in federal court. Consequently, in addition to the damages allowable under state law as defined in part I of this opinion, plaintiffs in the present action are entitled to all damages attributable to their incarceration following the filing of the criminal complaint if they can prove the prosecutor did not exercise independent judgment in filing the complaint. (*Smiddy v. Varney, supra,* 665 F.2d at p. 267.)[12]

## DISPOSITION

Let a writ of mandate issue directing the trial court to vacate its order re admissibility of evidence re damages dated September 24, 1999, and to enter a new and different order providing: (1) with respect to plaintiffs' state law claims plaintiffs are entitled to all damages which are attributable to injuries arising from false arrest and false imprisonment which preceded their arraignment; and (2) with respect to plaintiffs' federal civil rights claim, plaintiffs are entitled to all damages which are attributable to injuries arising from false arrest and false imprisonment which preceded their arraignment plus all damages attributable to injuries arising from their incarceration subsequent to arraignment if they can prove the prosecutor did not exercise independent judgment in filing the criminal complaint. Petition dismissed as moot in No. B135399

Costs to petitioners in No. B135420 and to real parties in interest in No. B135399.

Woods, J., and Neal, J., concurred.

The application of petitioners County of Los Angeles et al. for review by the Supreme Court was denied May 10, 2000.

---

[11]When this case was tried in 1995 *Gill v. Epstein, supra,* 62 Cal.2d 611, was still good law. As we have explained *ante,* see page 218, *Gill v. Epstein* provided a more liberal measure of damages than *Smiddy* so there was no reason for the plaintiffs to focus on the prosecutor's independent judgment.

[12]Naturally the trial court should instruct the jury it may not award double compensation for state and federal damages which overlap.